IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| STEPHEN DALE BARBEE, | § | |
|     *Petitioner,* | § | |
| | § | |
| V. | § | |
| | § | No. 4:09-cv-074-Y |
| RICK THALER, Director, | § | |
| Texas Department of Criminal | § | (death-penalty case) |
| Justice, Correctional | § | |
| Institutions Division, | § | |
|     *Respondent.* | § | |

## ORDER GRANTING MOTION FOR STAY AND ABEYANCE

On October 4, 2010, Stephen Dale Barbee("Petitioner") filed an application for a writ of habeas corpus challenging his conviction and death sentence for the capital murder of his former girlfriend and her seven year-old son (doc. 24). Four days later, Petitioner filed a *Motion to Hold Proceedings in Abeyance to Allow Petitioner to Exhaust Claims in State Court* (doc. 30). Rick Thaler ("Respondent") opposes the motion (doc. 35).

### I. APPLICABLE LAW

Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. *See* 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 30; *Morris*

*v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005). Such presentment can take place by direct appeal or through state habeas proceedings. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071 (West 2010); *Morris*, 413 F.3d at 491.

When a petitioner fails to exhaust his claims in state court, a federal court has the discretion to either stay and abate or dismiss the action. *See Brewer v. Johnson*, 139 F.3d 491, 493 (5th Cir. 1998). Stay and abeyance should be granted only in limited circumstances: when there is good cause for the failure to exhaust, the unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. *See Rhines v. Weber*, 544 U.S. 269, 278 (2005).

## II. ANALYSIS

This habeas application presents twenty-one separate claims of error.[1] Petitioner argues that three of these claims require a stay and abeyance: actual innocence, trial counsel's conflict of interest, and the denial of an evidentiary hearing in state habeas court. The Court concludes that the conflict-of-interest claim meets the requirements for a stay and abeyance.

---

[1] The claims include: actual innocence, unfair pretrial publicity, trial counsel's conflict of interest, multiple claims of ineffective assistance of trial counsel and appellate counsel, a denial of due process based on the state habeas judge's denial of an evidentiary hearing, various assertions of trial error, legal insufficiency of the evidence to prove Petitioner's future dangerousness, a constitutional challenge to the voir dire process, constitutional challenges to the Texas death penalty statute and execution procedure, and a challenge to the death penalty based on international law.

A. <u>Potential Merit</u>

In claim two, Barbee contends he was denied due process and a fair trial because his counsel had a conflict of interest that precluded them from effectively representing Barbee at trial. Specifically, Barbee contends there was a secret agreement between his lead counsel and the trial judge under which the trial judge appointed lead counsel to represent hundreds of indigent defendants in unrelated probation-revocation proceedings.[2] Barbee contends that the trial judge personally negotiated plea bargains in the revocation proceedings without a prosecutor's involvement, and if the probationer rejected the plea offer and insisted on a hearing, the sentence would be higher if the hearing resulted in revocation. Barbee contends the trial judge was indifferent to mitigating evidence in the revocation proceedings. He contends that the revocation appointments earned his lead counsel $710,000 (or 43 percent of his total earnings from court appointments) between 2001 and 2007. Barbee, who was tried and convicted in 2006, concludes that lead counsel's favored status as the sole appointee for hundreds of cases depended on counsel moving cases quickly without undue delay and

---

[2] In 1993, the Texas Legislature changed the statutory term for probation to "community supervision." Both terms refer to the same process and are used interchangeably by the Texas Court of Criminal Appeals. *See State v. Posey*, 330 S.W.3d 311, 312 n.1 (Tex. Crim. App. 2011)(citing *Ivey v. State*, 277 S.W.3d 43, 51 n.48 (Tex. Crim. App. 2009)).

abandoning due process in favor of efficiency and a high number of dispositions.

Barbee alleges that counsel, in keeping with this pattern of efficiency and high disposition count, put his own financial interests ahead of Barbee's interests by (1) attempting to pressure Barbee into pleading guilty, (2) failing to investigate and present mitigating evidence, (3) acquiescing to voir dire being supervised by a different judge, (4) presenting a short, almost non-existent defense and concluding the trial in "near-record time," (5) failing to inform the false-confession expert about basic facts which caused him to render an unfavorable opinion, and (6) failing to move for a change of venue.

Allegations of a conflict of interest between counsel's personal financial interests and duties owed to his client, if true, could form the basis for habeas corpus relief. *See United States v. Garza*, 429 F.3d 165 (5th Cir. 2005); *Beets v. Collins*, 65 F.3d 1258(5th Cir. 1995) (addressing the standards in this circuit for reviewing a Sixth Amendment violation based on defense counsel's alleged conflict of interest). Moreover, as discussed below, this claim is based on facts that the Texas Court of Criminal Appeals may reasonably decide were not ascertainable through the exercise of reasonable diligence at the time Barbee filed his first state habeas application and, therefore, would justify a subsequent application under state law. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5(a),(e) (West 2010); *cf.*

*Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005) (denying Neville's request for stay and abatement because state law prevented him from raising his claims in a subsequent state writ). For these reasons, the conflict-of-interest claim has potential merit.

B.  Good Cause

Petitioner has shown good cause for failing to develop this claim in state court because it is based on new evidence. Specifically, Petitioner contends that he learned about the appointment agreement for the first time in 2009, when a hearing was held in an unrelated habeas proceeding before another federal district judge.[3] One of the probationers represented by Barbee's lead counsel had filed a writ of habeas corpus alleging she received ineffective assistance of counsel at her revocation hearing. Counsel participated in a May 12, 2009 hearing on the matter, and it was there that he testified about his agreement with the trial judge to handle revocation cases. The district court granted relief, finding that counsel rendered ineffective assistance in failing to discover and present evidence of the probationer's mental disabilities. *See Wilson v. Quarterman*, No. 4:07-CV-0708-A (N.D. Tex. Aug. 19, 2009) (file sealed in its entirety by order dated August 20, 2009). The district court also

---

[3]In apparent contradiction to the assertion that Petitioner first heard about the agreement in 2009, the Petition avers that "there was a limited inquiry and questioning by the [trial] judge as to the propriety of the representation. (22 RR 166-173)." *Petition*, p. 78. If this is true, it would undermine Petitioner's contention that he could not have raised this issue before now. Volume 22 of the reporter's record only contains 84 pages, however. The Court has found no place in the trial record where the "propriety of the representation" was discussed.

expressed "serious concern" about the trial judge's practice of plea bargaining with probationers, but ultimately determined that issue to be moot.

Respondent does not dispute that this issue only came light in 2009 nor does he disagree that the existence of newly available evidence is good cause for the failure to raise a claim in state court. *See United States ex rel. Strong v. Hulick*, 530 F. Supp. 2d 1034, 1043 (N.D. Ill. 2008) (holding that, to the extent unexhausted claims are based on new evidence, good cause exists for the failure to exhaust).

### C. No Dilatory Litigation Tactics

Finally, there is no allegation and no showing that Petitioner has engaged in intentionally dilatory litigation tactics. It appears that justice is served by granting the motion to stay and abate these proceedings so that the claim may be fully and properly considered by the state court.

### III. CONCLUSION

In light of the fact that a stay and abatement is properly granted on one claim, it is unnecessary to determine whether a stay and abatement would be necessary on any other ground, and the motion to stay on those grounds is rendered moot. To avoid any further delay, the parties are instructed to fully exhaust any potential issue that may be properly raised in the state courts before returning to this Court. Should this abatement be found to have been improperly

granted, then this Court will consider the propriety of abatement on the two grounds remaining.

Petitioner's request to stay his federal habeas-corpus petition is **GRANTED** and these proceedings are hereby **STAYED AND ABATED** until further order of this Court.  The clerk of Court is directed to **administratively close** this case for statistical purposes. However, nothing in this order shall be considered a final dismissal or disposition of this case, and this case shall be reopened upon proper motion filed in accordance with the provisions of this order.

### IV. SCHEDULE

*Rhines* counsels that even when stay and abeyance is appropriate, "the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA." *Rhines*, 544 U.S. at 277. *Rhines* instructs district courts to "place reasonable time limits on a petitioner's trip to state court and back." *Id.* at 278. Accordingly, Petitioner shall file an application for post-conviction relief on this claim in state court within **forty-five days** of the date of this order, and thereafter promptly **notify** this Court, with identifying information, of the state proceedings instituted.

Following the exhaustion of state proceedings, Petitioner shall file an application to reopen the proceedings in this Court within **forty-five days** of the date of any final state-court order denying relief on this claim.  If the state court grants relief, Respondent must promptly notify this Court.  If the grant of relief causes the

remaining claims to become moot, then these proceedings will be dismissed.  If Petitioner fails to comply with this order, these proceedings will be dismissed.

    SIGNED May 18, 2011.

                                                           TERRY R. MEANS
                                                           UNITED STATES DISTRICT JUDGE

TRM/ks:be